## ROBERT TYRONE TISDALE *v.* STATE OF MARYLAND

[No. 447, September Term, 1978.]

*Decided January 11, 1979.*

The cause was submitted on briefs to MOORE, LOWE and WILNER, JJ.

Submitted by *Thomas E. Grzech, Assigned Public Defender,* for appellant.

Submitted by *Francis Bill Burch, Attorney General, Deborah K. Handel, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Marshall H. Feldman, Assistant State's Attorney for Baltimore City,* for appellee.

WILNER, J., delivered the opinion of the Court.

On March 12, 1975, appellant was convicted by a jury in the Criminal Court of Baltimore of robbery with a dangerous and deadly weapon and use of a handgun in the commission of a felony, for which he was sentenced to concurrent terms of imprisonment of fifteen and five years, respectively. On appeal, we reversed those convictions and remanded the case for a new trial. *Tisdale v. State,* 30 Md. App. 334 (1976). Our mandate issued March 29, 1976.

Pursuant to that mandate, Tisdale was retried, again before a jury, on October 11-14, 1976, and was again convicted of robbery with a dangerous and deadly weapon. He was once more sentenced to prison for 15 years. He appealed, but neglected to comply with Maryland Rule 1025 (Record — Time for Transmitting), and, as a result, his appeal was stricken on March 29, 1977. In a subsequent proceeding filed under the Uniform Post Conviction Procedure Act, however, he was, on July 5, 1977, granted a belated appeal, and, after numerous extensions of time to file the transcript and transmit the record,[1] the appeal is now, in December, 1978, finally before us.

The evidence presented by the State in the second trial was substantially the same as that presented in the first. It may be fairly summarized from what we said in our earlier Opinion, *Tisdale v. State, supra,* 30 Md. App. at 336:

> "Testimony was produced at trial from which the jury could find that the facts were as follows: On October 2, 1974, at approximately 12:20 A.M., the victim, William Cunningham, was operating his taxicab in the vicinity of Warwick and North Avenues, Baltimore, Maryland, and picked up appellant as a fare. Upon reaching his destination at the 1500 block of Whitelock Street, appellant alighted from the taxicab, pulled a gun out of his pocket and demanded Mr. Cunningham's money. He then took eight or nine dollars from Cunningham's

---

1. The record shows that extensions of time to file the transcript with the clerk were granted on September 15 and November 8, 1977, and on January 11, February 22, April 25, June 8, and June 27, 1978.

shirt pocket, disabled his radio and told him to drive off. Mr. Cunningham drove one quarter block, stopped the cab, took a revolver from under the seat and began to pursue appellant, firing several shots before overtaking and apprehending him.

"Officer Boysie Watkins, on routine patrol, came upon the scene and observed Mr. Cunningham holding the appellant against the side of his cab. Mr. Cunningham explained that he had just been robbed. At that point, according to the testimony of the officer and the victim, appellant made an utterance in which he admitted the robbery. He was then arrested. . . ."

Tisdale's version of what occurred was quite different. He denied having been a passenger in the cab but claimed that he was simply standing on the corner talking to friends when Cunningham tapped him on the shoulder and asked to speak with him privately. He said that Cunningham complained of just being robbed by two men and solicited appellant's help in locating the men. When appellant explained that he was a relative stranger in the area, he said Cunningham became angry and pulled a gun on him. He said he then struggled with Cunningham, during the process of which the gun went off several times, but eventually he ended up being forced by Cunningham against the side of the cab at about the same time the police arrived.

Appellant maintained that the police had originally arrested Cunningham for creating a disturbance, and that it was not until about twenty minutes later that he was arrested on a trumped-up charge of allegedly robbing Cunningham.

Appellant makes five complaints in this appeal, none of which have merit. We shall discuss them in sequence.

(1) Did the trial judge's telephone conversation with a juror in chambers, out of the presence of appellant, constitute a critical stage of the trial, at which appellant had the absolute right to be present?

When court recessed at the end of the second day of trial, both the State and the defense had completed their respective cases-in-chief. The State indicated a desire to call one rebuttal witness.

The next morning, as court convened, the court announced that it had been informed by the Clerk's office that Juror No. 6, Ms. Smallwood, had called to report that her child was sick and that she would therefore not be present in court. Defense counsel said that he had no objection to seating one of the alternate jurors, but, after discussing the matter with appellant, he announced that appellant objected to that approach:

> "Your Honor, I have spoken to Mr. Tisdale and his position is, it is very late in the trial, obviously, and he feels that because Mrs. Smallwood was sitting as one of the twelve on the Jury, she was paying more attention than maybe an alternate would. He felt it would be detrimental to him. He wants to wait until Ms. Smallwood is able to come back and sit on the Jury. He asked me to make a Motion at this time for postponement until Ms. Smallwood could come back to the Jury."

The court then offered to send the sheriff out to bring Ms. Smallwood in, but Tisdale said that he didn't want the court to do that. The court thereupon said that "I will make a personal call to her home and I will advise you what the situation is." Counsel, but not appellant himself, accompanied the judge to his chambers from which, in their presence, he called Ms. Smallwood. Returning then to the courtroom, the court announced, outside the presence of the jury:

> "Mr. Tisdale, Mr. Isaacson, in Mr. Isaacson's and the State's Attorney's presence, the Court called Mrs. Smallwood at her home phone number. She answered the phone and she indicated that her child is about two years old. She took the child to St. Agnes last night. The child was vomiting and she took the child to the emergency room where the child

received some treatment. She secured medication from the doctors there, she then took the child home. She is presently at home with the child. There is no one else at the home except her to take care of the child.

"Under those circumstances, I think it would be a little improper for me to insist that she come down here and to send the sheriff out to bring her in here. Under those circumstances, that is the reason we pick alternates is that in case something like this happens, an emergency arises in the lives of one of the Jurors, and that is to prevent any impediment to the continuation of the trials. I will seat the alternate number one in seat number six."

We note initially that appellant does not complain here about the court's decision to seat the alternate and proceed with trial, or about the fact that the judge called the juror, so those issues are not before us. He complains only that he was not present when the conversation with the juror took place.

The law is quite clear, of course, that a criminal defendant has a right to be present at every stage of his trial, and that this right not only emanates from the common law, but is provided and protected as well by the State and Federal Constitutions and by Maryland Rule 724. *See Bunch v. State,* 281 Md. 680 (1978). But, as the Court noted in *Bunch,* "not everything that happens in a criminal case after the jury is impaneled is deemed a 'stage of the trial' at which the defendant has a right to be present." 281 Md. at 684. The question here, of course, is whether this conversation with the juror was such a stage.

By way of short preface, we caution the trial courts that a defendant's right of presence is a fundamental one, not to be trifled with; and, if there is the slightest doubt as to whether a particular matter or event arising during the course of a trial is a "stage of the trial" requiring the defendant's presence, the doubt should, wherever possible, be resolved in his favor; *i.e.,* mandating his presence. This is

simply a matter of exercising abundant care to assure that the trial is not only fair in fact, but also in appearance.

Turning to the precise question raised here, it does not appear that the Maryland appellate courts have ever ruled directly on it,[2] however a number of Federal courts have; and the consensus seems quite clearly to be that it is not impermissible for a judge to make such an inquiry of a juror outside the presence of the defendant.

In *United States v. Woodner,* 317 F. 2d 649 (2nd Cir., 1963), *cert. den.,* 375 U. S. 903, the Court concluded that no reversible error was committed when, near the end of the trial, the judge spoke privately with a juror who had asked to be excused for personal hardship in an attempt to convince the juror to remain on the jury. Noting that counsel had agreed to this private meeting, the Court concluded that, even if that were not the case, prejudice would not be presumed in the absence of some evidence of it. Said the Court (317 F. 2d at 652): "We have enough confidence in the integrity and fairness of the District Judges to assume that they will not make unfair remarks to jurors while undertaking *administrative duties* of this nature." (Emphasis supplied.)

*Woodner* was cited, and its rationale was applied, in *United States v. Houlihan,* 332 F. 2d 8 (2nd Cir., 1964), *cert. den.,* 379 U. S. 828. The juror there was a nurse who had asked to be excused before trial started because her employer, a patient suffering from heart illness, objected to her serving on what loomed as a two-month trial. Her request was denied at that time, but prior to the convening of court on the eighth day of trial, she appeared at the judge's chambers and advised him that her patient had sustained an angina attack the previous day and was alone. Because of the emergency, the judge excused the juror. Neither counsel nor the defendant were

---

2. In Mills v. State, 12 Md. App. 449 (1971), this Court noted, without comment and in the context of whether a juror should have been excused when it turned out that she knew a witness, that "[a]fter the juror realized she knew the prospective witness, and her knowledge became apparent, the trial judge examined her in chambers and decided that her acquaintance with the witness would not influence her ability to render a fair and impartial verdict." Neither the Opinion nor the briefs in that case indicate whether the defendant was present at the in-chambers examination. *See also* United States v. Rowell, 512 F. 2d 766 (8th Cir., 1975), *cert. den.,* 423 U. S. 844.

present during this conversation, and no transcript was made of it, but everyone was fully informed of what had occurred when they arrived.

Against an attack that the court's dismissal of the juror is an integral part of the trial, at which the defendant had a right to be present, the Court held that the defendant's rights had not been violated. Noting that in *Woodner* it had found that no prejudice (or error) arose from a private conversation resulting in the retention of the juror, the Court concluded that "[c]ertainly no greater prejudice can arise when as a result of the interview the juror is dismissed and, in the presence of the defendant and his attorney, an alternate is substituted." *Houlihan, supra,* at 13.

*See also United States v. Lustig,* 555 F. 2d 737 (9th Cir., 1977), *cert. den.,* 434 U. S. 926; *United States v. Garafolo,* 385 F. 2d 200 (7th Cir., 1967), *vacated on other grounds,* 390 U. S. 144, *rev'd on other grounds,* 396 F. 2d 952; *United States v. Crisona,* 416 F. 2d 107, 119 (2nd Cir., 1969); *Ellis v. State of Oklahoma,* 430 F. 2d 1352 (10th Cir., 1970), *cert. den.,* 401 U. S. 1010; *United States v. Steed,* 465 F. 2d 1310 (9th Cir., 1972), *cert. den.,* 409 U. S. 1078; *United States v. Baca,* 494 F. 2d 424 (10th Cir., 1974); *Bacino v. United States,* 316 F. 2d 11 (10th Cir., 1963), *cert. den.,* 375 U. S. 831; *United States v. Evans,* 542 F. 2d 805 (10th Cir., 1976), *cert. den.,* 429 U. S. 1101. *Compare United States v. Taylor,* 562 F. 2d 1345 (2nd Cir., 1977), and *United States v. Gay,* 522 F. 2d 429 (6th Cir., 1975), where the trial court had declined to advise *counsel* of the substance of private communications with a juror.

Most of these cases speak in terms of whether the defendant has been "prejudiced," either with respect to the right of presence directly or as to whether its violation was "harmless"; and distinctions have been drawn between those situations in which the inquiry concerned a juror's disqualification for cause — for bias or partiality — and those in which the question was merely whether the juror was able to continue.

Maryland Rule 751 b states, in part, that "[a]ny juror, who prior to the time the jury retires to consider its verdict, becomes unable or disqualified to perform his duties, shall be

replaced by an alternate juror in the order in which called." We noted in *James v. State,* 14 Md. App. 689, 699 (1972), with respect to similar language in the predecessor rule (former Maryland Rule 748), that the circumstances under which a juror may be found "unable or disqualified" to perform his duties are not defined, and each case must stand on its own facts. Thus, the decision to excuse a juror and to seat an alternate in his place is one that rests within the discretion of the trial court.

Unsaid in *James* — unnecessary to be said in *James* — is that, where the issue is disqualification of a juror for cause, the court's discretion is necessarily more limited than where the issue is the juror's ability to continue. A proceeding to determine whether a juror should be disqualified for bias or partiality is much akin to the initial jury selection process. The ultimate issue, in both instances, is the fairness of the trial itself, and the same, or closely similar, considerations pertain to both types of proceedings. Primarily, if not wholly, for that reason, a defendant's presence is required at proceedings conducted for the purpose of determining a juror's post-impaneling disqualification, *Bunch v. State, supra,* 281 Md. at 685, 686, and during *voir dire* examinations, *Haley v. State,* 40 Md. App. 349 (1978).

Where the question is the juror's ability to continue, however, the issue is not so much one of fairness but of efficiency. In *James, supra,* we quoted at length and with approval from *People v. Peete,* 202 P. 51 (Cal. App., 1921):

> "We may not assume that an 'alternate', merely because he is conscious that it is possible that he may never be required finally to decide the case as one of the twelve by whom the verdict is rendered, will violate his oath and pay less heed to the evidence than he would if he were impaneled as one of the regular jurors from the inception of the trial. On the contrary, we must assume that he will obey his oath, and that he will well and truly try the matter in issue, as he has sworn to do, just as he would if he were one of the original twelve jurors."

Acceptance of this principle, which is necessarily implicit from the very existence of Maryland Rule 751 authorizing the selection of alternates, makes an inquiry as to a juror's ability to continue a wholly different type of proceeding than one designed to determine a juror's bias. It is presumed that the defendant's trial will be no less fair or impartial if a regular juror is excused because he is unable to continue and an alternate is seated in his place. The relevant inquiry, rather, is only whether the juror in fact is unable to continue, and, if so, whether trial should be recessed until the juror is able to return or should proceed apace. In either event, it is presumed, in the absence of evidence to the contrary, that the defendant will be tried by a fair and impartial jury, properly selected.

In this context, the determination of whether to wait for the absent juror or to proceed is clearly a matter of discretion for the court, and under the prevailing practice and case law, the court would have been fully justified in excusing the absent juror and seating an alternate in her place directly from the bench. The mere absence of the juror, particularly when coupled with the message from the Clerk, would have sufficed to negate any reasonable claim of abuse of discretion. In an extra, and unnecessary, effort to be more than fair with appellant and solicitous of his objection, the court made the telephone call to determine firsthand whether or not the juror would be able to resume her duties with dispatch. The sole function of this call was to assure that the court's decision would be an informed one — that its discretion would be exercised soundly and intelligently. In that context, it was entirely collateral to any matter pertaining to appellant's guilt or innocence, or to the fairness of his trial.

When made in the presence of counsel and without objection and followed by a full disclosure in open court and on the record of what occurred, the call was, we believe, one of those "administrative" matters referred to in *Woodner, supra,* rather than a "stage" in the trial at which the defendant had a right to be present.

(2) Was appellant denied due process of law because

the State failed to produce certain tape recordings until the day of trial and because the court declined to permit appellant to listen to the tapes?

On June 1, 1976, appellant, in proper person, filed a motion for discovery and inspection seeking a wide range of tangible evidence, among which was a "full transcript of Baltimore City Police radio and telephonic communications to or from Officer Boise [sic] Watkins, Western District Police Station, on October 1, 1974 and October 2, 1974, as they relate to the defendant . . . ." This evidence, he claims, would support his contention that the police initially arrested the cab driver, Cunningham, and would serve to discredit evidence produced at his first trial indicating that he (appellant) was arrested first.

As of the commencement of trial, October 11, 1976, these tapes had not been turned over, and, as a result, appellant moved to dismiss the proceedings. After some discussion, it appeared that the tape or a transcript of it could be produced, but not immediately. The court offered appellant a continuance, which he declined; and the court thereupon permitted trial to proceed but reserved ruling on the motion to dismiss. During a recess after the jury was impaneled, but before any evidence was offered, the tape was produced and was played by defense counsel. The court then inquired as to whether counsel desired to use the tape in any manner; if so, the court said that it would instruct the officer to return with the tape at the appropriate time. Counsel, after consulting with appellant, responded:

"In my opinion there is nothing beneficial in the tape which would help him in his defense. Mr. Tisdale has said to me, Robert, at this time he does not want to make a decision, he wants to reserve his right whether or not to use the tapes when he puts his defense on."

To this, the court responded that appellant could use the tapes if he chose to do so, noted that the officer could return, and denied the motion to dismiss. At the conclusion of the

State's case, appellant asked for acquittal, in part upon the grounds alleged in the earlier motion — that the tape was not produced until trial — to which the court stated that it had instructed the officer to return with the tape: "He will be on call here Wednesday. The officer will be here to produce that tape, you may listen to it again. You may use it in any measure you like during the trial."

Appellant seeks to fit this case under the rule of *Brady v. Maryland,* 373 U. S. 83 (1963), but *Brady's* aegis is not that large. In the first place, without in any way sanctioning the unexplained, and therefore unjustified, dereliction of the State in not producing the tape earlier, the fact is that it was produced at trial, appellant was offered, and refused, a continuance, and, in counsel's judgment, it contained nothing of any help to appellant. Upon this record, it does not appear that appellant suffered any prejudice from the delay, either procedurally or in substance; and there was no basis, therefore, for the court either to dismiss the charges or direct a verdict of acquittal by reason of the delay. *Younie v. State,* 19 Md. App. 439 (1973), *rev'd on other grounds,* 272 Md. 233; *Tobias v. State,* 37 Md. App. 605 (1977).

With respect to the second prong of appellant's "due process" argument — that he was not permitted to listen to the tape himself — we observe only that he made no request to do so, and never presented his complaint about not hearing the tape to the trial court. We shall therefore decline to consider that argument. Maryland Rule 1085.

### (3) (4) Was appellant denied his right to the effective assistance of counsel?

Appellant's third and fourth arguments are essentially the same — that trial counsel was not appointed until shortly before trial, that counsel did not have time to investigate the case properly, and that he failed to afford appellant the opportunity to review the police tapes. We consider this issue because it was raised and decided in the trial court. We have reviewed the record and find no substance whatever to the claim of inadequate or ineffective assistance of counsel.

(5) Was appellant denied his right to a speedy trial?

The mandate from this Court reversing appellant's earlier conviction and remanding the case for retrial was issued on March 29, 1976. A month later — April 30, 1976 — defense counsel entered his appearance, and trial was thereafter scheduled for June 3, 1976. On or about June 1, 1976, appellant, in proper person, filed a formal request for postponement, claiming that his counsel had not communicated with him, and that, if tried under "the present circumstances", he would be denied his right to the effective assistance of counsel. His motion was granted; trial was postponed and apparently re-set for August 12, 1976. For some reason, unexplained, on July 26, 1976, trial was again postponed with the consent of both the State and defense counsel. On August 23, 1976, appellant filed a motion for "immediate trial", alleging that the State had caused three previously scheduled trials to be postponed (an allegation that finds no support whatever in the record). Trial was once again re-set for October 11, 1976, and it actually commenced on that day.

We find, from the record, no violation of appellant's right to a speedy trial. The total elapsed time between the issuance of our earlier mandate, which started the clock running, and trial was 6½ months, which has not been considered to be of constitutional dimension. *Davis v. State,* 32 Md. App. 318 (1976), *cert. den.,* 278 Md. 720. Even assuming, however, that the balancing test prescribed by *Barker v. Wingo,* 407 U. S. 514 (1972), must be applied, we find, after considering the total length of delay, the reasons for it, the assertion of the right (and when it was asserted), and any prejudice that may have resulted, that the balance does not work out in appellant's favor.

*Judgment affirmed; appellant to pay the costs.*