532 A.2d 189

**Vincent S. STOKES**

v.

**STATE of Maryland.**

**No. 149, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Nov. 5, 1987.

674

José Felipé Anderson, Asst. Public Defender (Alan H. Murrell, Public Defender on the brief) Baltimore, for appellant.

Ronald M. Levitan, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Lawrence Doan, Asst. State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Argued before WEANT, BLOOM and POLLITT, JJ.

BLOOM, Judge.

A jury in the Circuit Court for Baltimore City acquitted appellant, Vincent S. Stokes, of possession of cocaine with intent to distribute, simple possession of cocaine and possession of controlled paraphernalia, but convicted him of unauthorized use of an automobile. The court imposed the maximum sentence, a prison term of four years.

Appellant contends that the trial judge erred when, *sua sponte*, he substituted an alternate juror for a designated juror during the trial. He also contends that the judge erred in refusing to give the jury a proper instruction requested by appellant and by basing the sentence upon the evidence pertaining to the three charges of which he was acquitted. We agree with appellant's contention regarding the substitution of jurors, and we will reverse the conviction for that reason. It will not be necessary, therefore, to address the other issues.

During the trial, the presiding judge interrupted the proceedings and announced that he had observed juror number eleven at times sleeping and at other times smiling at appellant, with appellant returning the smiles. Without conducting any inquiry of the juror, and over the strenuous objection of appellant, the judge dismissed juror number eleven and substituted for her the first alternate, explaining

that he strikes sleeping jurors "regularly when [he sees] a situation like that."

We have heretofore recognized, in a somewhat different context, that a defendant has a " 'valued right to have his trial completed by a particular tribunal.' " *Tabbs v. State*, 43 Md.App. 20, 22, 403 A.2d 796 (1979) (quoting *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974, 978 (1949)). We have also noted " 'the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.' " *Tabbs, supra,* [43 Md.App.] at 22, 403 A.2d 796 (quoting *United States v. Jorn,* 400 U.S. 470, 486, 91 S.Ct. 547, 558, 27 L.Ed.2d 543, 557 (1971)). Because a defendant has a substantial right to have the jury that was impanelled ultimately decide his fate, a judge should not dismiss a juror unless the record reveals that such dismissal is clearly warranted.

Maryland Rule 4–312(b)(3) provides that in all non-capital cases "[a]ny juror who, before the time the jury retires to consider its verdict, becomes or is found to be unable or disqualified to perform a juror's duty, shall be replaced by an alternate juror in the order of selection." In *James v. State*, 14 Md.App. 689, 288 A.2d 644 (1972), this Court noted that Rule 748 of the Maryland Rules of Procedure (a forerunner to Maryland Rule 4–312)

> ... does not define the circumstances under which a juror shall "become unable or disqualified" to perform his duties and each case must stand on its own facts. Though the directive of the Maryland Rule—"shall replace jurors"—is couched in mandatory terms, it is obvious that the word "shall" as used therein is directory. Thus, the substitution *vel non* of a supernumerary for a regular juror lies within the sound discretion of the trial judge. Such an exercise of discretion will not be dis-

turbed on appeal unless arbitrary and abusive in its application.

*Id.* at 699, 288 A.2d 644.

In *Tisdale v. State,* 41 Md.App. 149, 396 A.2d 289 (1979), we stated that

... where the issue is disqualification for cause, the court's discretion is necessarily more limited than where the issue is the juror's ability to continue. A proceeding to determine whether a juror should be disqualified for bias or partiality is much akin to the initial jury selection process. The ultimate issue, in both instances, is the fairness of the trial itself, and the same, or closely similar, considerations pertain to both types of proceedings.... Where the question is the juror's ability to continue, however, the issue is not so much one of fairness but of efficiency.

*Id.* at 156, 396 A.2d 289.

In the case *sub judice,* the trial judge did not specify whether he disqualified juror eleven for cause or because he felt she was unable to continue. With regard to the basis for his action, the judge remarked, "The first reason is the gross inattention toward the testimony, the second reason is the communications between the defendant and juror eleven ... communication is not the apt word...."

■ The mere exchange of smiles between the juror and appellant, without more, did not amount to a showing of bias. We have pointed out that "[a] juror may be struck for cause only where he or she displays a predisposition against innocence or guilt because of some bias extrinsic to the evidence to be presented." *McCree v. State,* 33 Md.App. 82, 98, 363 A.2d 647 (1976), citing *Johnson v. State,* 9 Md.App. 143, 149, 262 A.2d 792 (1970). Mere smiles, without more, would not amount to such a predisposition. At the very least, some inquiry by the judge as to why the juror smiled at appellant would appear to have been in order. Had the juror been questioned with regard to her knowledge of or relationship to appellant, bias might have been established.

Otherwise, the juror should be free to smile at appellant just as she should be free to smile at the victim or at the State's Attorney.

■ By the same analysis, we do not believe that the judge's observation of "gross inattentiveness," disputed by defense counsel, was sufficient to establish that the juror was unable to continue.

Maryland Rule 4–312(b)(3) is similar in effect to Rule 24(c) of the Federal Rules of Criminal Procedure, which specifically authorizes a trial judge to remove a juror and replace him with an alternate if the judge finds the juror to be "unable or disqualified to perform [his] duties." The exercise of that authority to remove a juror who slept through a portion of the trial and replace him or her with an alternate was affirmed in *United States v. Warner*, 690 F.2d 545 (6th Cir.1982); *United States v. Cohen*, 530 F.2d 43 (5th Cir. 1976); *United States v. Cameron*, 464 F.2d 333 (3rd Cir. 1972); and *United States v. Smith*, 550 F.2d 277 (5th Cir), *cert. denied*, 434 U.S. 841, 98 S.Ct. 138, 54 L.Ed.2d 105 (1977). State appellate courts have also upheld the substitution of a supernumerary for a sleeping juror, on the theory that the trial judge has a discretionary right, if not a positive duty, to remove a juror who is unqualified to perform his or her duties. *See People v. Russell*, 112 A.D.2d 451, 492 N.Y.S.2d 420 (N.Y.App.Div.1985); *People v. Dupont*, 111 Misc. 2d 328, 444 N.Y.S.2d 40 (1981); *State v. Youngblood*, 648 S.W.2d 182 (Mo.Ct.App.1983). Indeed, in one case in which defense counsel requested the court to substitute an alternate for a juror who counsel alleged was sleeping during the court's charge to the jury, it was held that the trial judge erred in denying the request without at least conducting a hearing or questioning the juror. *State v. Reevey*, 159 N.J.Super. 130, 387 A.2d 381, *cert. denied*, 79 N.J. 471, 401 A.2d 228 (1978). Normally, however, refusal of the trial judge to remove a juror who has been sleeping during the trial or to grant a mistrial on that ground has been upheld where the trial judge either was not convinced that the juror had been sleeping, *State v. Wiggins*, 7 Conn.

App. 95, 507 A.2d 518 (1986); *State v. Lesley*, 672 P.2d 79 (Utah 1983); *People v. Hanes*, 42 Colo.App. 527, 596 P.2d 395 (1978), *aff'd*, 198 Colo. 31, 598 P.2d 131 (1979); *State v. Johnson*, 463 So.2d 620 (La.App.1984), or found that the juror was asleep for such a brief time that no prejudice occurred. *Norris v. State*, 490 So.2d 839 (Miss.1986); *State v. Tabor*, 657 S.W.2d 317 (Mo.Ct.App.1983). For discussion of the question of inattention of a juror from sleepiness or other cause as a ground for reversal or new trial, *see* Annotation, *Inattention of Juror from Sleepiness or Other Cause as Ground for Reversal or New Trial*, 88 A.L. R.2d 1275 (1963).

In *State v. Cass*, 356 So.2d 396 (La.1977), the Supreme Court of Louisiana reversed a conviction where a juror was summarily removed because the trial judge observed the juror sleeping—head hanging low, bobbing or nodding, and eyes closed—for two to four minutes. After the juror was replaced, the defendant moved for a mistrial and the trial judge denied that motion. The Court held that even if the juror did briefly doze off, that fact would not necessarily disqualify him:

Had the juror been shown to have been sleeping through a substantial part of the trial or had he been unable to stay awake despite warnings or efforts to arouse him, *and had the defendant and the state been afforded an opportunity to explore on the record the defendant's [sic] inability to perform on this account*, we would be presented with a substantially different question for review.

356 So.2d 398. (Emphasis added.)

Here, as in *Cass*, the trial judge removed the juror summarily, solely on the basis of his own observations, without giving either the accused or the State an opportunity to determine for the record whether the juror was, in the language of Md. Rule 4-312(b)(3), "unable or disqualified to perform a juror's duty."

■ We agree with the reasoning of the Supreme Court of Pennsylvania that "[w]hile the decision to remove a juror because of inability to perform the usual functions of a juror is within the sound discretion of the trial judge, the exercise of this judgment must be based upon a sufficient record of competent evidence to sustain removal." *Commonwealth v. Saxton*, 466 Pa. 438, 442, 353 A.2d 434, 436 (1976). A competent record is especially crucial when, as here, counsel for appellant not only objects to the *sua sponte* dismissal, but also disputes the judge's observations regarding the juror's "gross inattentiveness" to the testimony.

Because the record in this case fails to support the judge's statement that juror eleven was unable to continue, his dismissal of her amounted to an abuse of discretion. That error may have been particularly damaging in this case, not only because it deprived appellant of the right to complete the trial with the same jury that began it, but also because the second alternate had earlier informed the judge that, due to previously scheduled vacation plans, she would be unable to continue as a juror if the trial lasted longer than two days. The trial judge allowed the second alternate to remain because the trial was scheduled to conclude within two days; however, his dismissal of juror eleven put counsel for both appellant and the State in the undesirable position of either concluding the case within two days or continuing the trial without an alternate juror. In fact, the trial lasted four days and was concluded without an alternate. The unwarranted dismissal of juror eleven might well have influenced the conduct of the trial because of the risk of a mistrial due to lack of jurors.

The State argues that any error in striking the juror would not require reversal because no prejudice was shown, citing *Bluthenthal and Bickart v. May Co.*, 127 Md. 277, 96 A. 434 (1915). The State's reliance on that case is misplaced. *Bluthenal* involved an instance in which a *prospective* juror was stricken before the jury was sworn; a party was permitted to withdraw his peremptory chal-

lenge against one juryman, who thereby became a qualified juror, in order to exercise a peremptory challenge against another juror. There the Court stated:

It does not appear that the defendant was injured by the action complained of, or that the jury which actually tried the case was not composed of competent and qualified jurors. The authorities support the proposition that it is not reversible error for the Court of its own motion to exclude a juror even for insufficient cause, if an unobjectionable jury is afterwards obtained. In *Pittsburgh, etc., Ry. Co. v. Montgomery,* 152 Ind. 1 [49 N.E. 582], in discussing an objection such as that now under consideration, the Court said: "It is complained under the motion for a new trial that the Circuit Court erred in excusing on its own motion the juror Overholser, who it is alleged was a competent juror, over Appellant's objection. But it is not shown that the jury which was finally impaneled was not a fair and impartial jury. In such a case, the matter is very much in the discretion of the trial Court, and no error is committed where no injury results from the Court's action in excusing the juror...."

*Id.* at 286. [Citation omitted.]

The State also points to *Meyers v. State,* 58 Md.App. 211, 472 A.2d 1027, *cert. denied,* 300 Md. 484, 479 A.2d 373 (1984), in which this Court quoted the above passage from *Bluthenthal.* Its reliance on *Meyers* is also misplaced. There the defendant-appellant complained that the trial judge erred, *inter alia,* (1) in excluding from the jury all persons who expressed the view that they would never vote to impose capital punishment and (2) in replacing a sitting juror with an alternate "in the absence of findings of fact to support that ruling." With respect to (1) we held that *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and *Chadderton v. State,* 54 Md.App. 86, 456 A.2d 1313 (1983), were dispositive of the issue; with respect to (2) we held that substitution of an alternate for a sitting juror was proper because the sitting juror had violated the court's instructions by discussing the case with a

prospective witness, citing *Tisdale v. State*, 41 Md.App. 149, 396 A.2d 289 (1979), and *James v. State*, 14 Md.App. 689, 288 A.2d 644 (1972). Our holding in *Myers* was not "harmless error"; it was "no error."

In the case *sub judice*, the jury had been selected and sworn. Although it is true that appellant cannot complain that the jury which decided his fate was not a fair and impartial one, it was still not the same jury that had been selected, with his approval, to decide his fate. Jurors are not fungible; they are not all equally satisfactory to either party. Each party would like a jury of twelve people (plus as many alternates as are to be chosen) who he hopes will be favorably disposed to his cause. In the process of selecting a jury, therefore, he uses his peremptory strikes to eliminate from the panel persons he fears might be likely to favor the opposing side. The result is a compromise—a panel composed of individuals of unequal desirability as jurors to either party but "satisfactory" to both sides in the sense that each believes the group to be the best that could be selected from the venire under the circumstances.

As Judge Moylan observed in *Chew v. State*, 71 Md.App. 681, 527 A.2d 332 (1987):

> It is again an article of faith among trial advocates and part of the core curriculum of trial advocacy seminars and institutes that the ideal jury will be made up of twelve clones of one's client. When, therefore, two skilled professionals, each armed with a cartridge belt full of peremptory challenges, sit down before a panel of forty or fifty prospective jurors knowing that only twelve will survive, their aim is to leave standing the most favorable jury possible. The purpose is not only to eliminate the negative but to accentuate the positive. Admittedly, much guesswork is involved, but it is intelligent guesswork, educated hunches, background checks and statistical probabilities, hopefully valid generalizations and the law of averages. The goal is not only to minimize the cultural differences and the lack of points of identity that might likely distance a juror from one's

client but also to maximize the likely sympathies, empathies and common experiences that will help a juror identify with one's client. Generally speaking, the issue is not that of good jurors versus bad jurors or adequate jurors versus inadequate jurors. It is rather the wily maneuvering of two skilled chess players to obtain a slight edge, a barely discernible "tilt," as they mold a jury.

*Id.* at 705.

If, then, the judge replaces a juror who appears to be favorably disposed toward the defendant (in this case, the juror who smiled at him) with an alternate who does not appear to be as favorably disposed to his cause, the defendant has been injured. Even though the jury remains composed of competent and qualified jurors, the judge has remolded it with a new "tilt."

■ We concur, therefore, with what the Supreme Court of Louisiana said in *State v. Rounsavall,* 337 So.2d 190, 191 (La.1976), *quoted in State v. Buggage,* 351 So.2d 95, 96 (La.1977), and repeated in *State v. Cass, supra,* 356 So.2d at 397–98: [1]

Once the jury has been selected and sworn the accused has a right to have his case decided by the particular jurors selected to try him. The phrase "incompetent to serve" embodied in Article 796 refers to death, illness or any other cause which renders a juror unfit or disqualified to perform his duty as prescribed. The right of the accused to have a juror selected by him try the case is a substantial one, the improper deprivation of which is prejudicial. The doctrine of harmless error is, therefore, inapplicable.

■ Since we conclude that, in removing juror number eleven over the defendant's objection without establishing

---

**1.** Both *Rounsavall* and *Buggage* were eventually overruled, on grounds unrelated to the language quoted in *Cass*. *Cass* has since been cited with approval. *State v. Johnson,* 463 So.2d 620, 627 (La.App.1984).

on the record good cause for such extraordinary action, the trial judge abused his discretion to the prejudice of the defendant, we reverse the judgment and remand for a new trial.

JUDGMENT REVERSED AND CASE REMANDED FOR NEW TRIAL.

COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.