642 A.2d 290

**Harold Thomas COOK**

v.

**STATE of Maryland.**

**No. 1465, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

June 8, 1994.

618

Victor J. D'Avella, Bel Air, for appellant.

Rachel Marblestone, Staff Atty. (J. Joseph Curran, Jr., Atty. Gen., Gary E. Bair, Asst. Atty. Gen., Baltimore, and Joseph I. Cassily, State's Atty. for Harford County, Bel Air, on the brief), for appellee.

Argued before BLOOM, FISCHER and HARRELL, JJ.

HARRELL, Judge.

Harold Thomas Cook, appellant, was charged with various offenses stemming from his alleged sexual abuse of the eldest of his two adopted stepdaughters.[1] A jury in the Circuit Court for Harford County convicted him of child abuse sexual offense in the second degree, assault with the intent to commit second degree sexual offense, a third degree sexual offense, battery, and unnatural and perverted sexual practice. Following the circuit court's denial of his motion for a new trial and sentencing on 15 September 1993, appellant filed a timely notice of appeal to this court, alleging that:

I. The trial court committed reversible error when it dismissed a seated juror for cause.

II. The trial court committed reversible error when it permitted the State to elicit allegations of other sexual misconduct by appellant that were unrelated to the victim in the instant case.

III. The indictment was subject to dismissal because the State failed to ascertain with any certainty the time of commission of the offenses charged.

IV. The trial court erred when it instructed the jury that a witness is presumed to speak the truth.

V. The separate convictions for second degree sexual offense, third degree sexual offense, perverted sexual practice, and child abuse were improper.

---

1. The original indictment included not only allegations of repeated sexual abuse of the victim, but also allegations of appellant's sexual abuse of the victim's younger sister. For reasons unexplained by the record, the State nol-prossed all charges involving the younger sister.

Based on the record before us, we reverse on Issue I. Our reversal eliminates the necessity to decide the remaining issues presented, save Issue III, the nature of which compels a response. We hold that the State's indictment (Issue III) was valid.

## FACTS

This case arose following a child sexual abuse complaint lodged by the victim in 1992, now an adult, approximately eighteen years after commencement of the alleged abuse. The victim recalled that she did not tell anyone about the alleged abuse during the early years because appellant frightened her. As she got older, the victim stated that she did not alert anyone because Cook told her that her mother would wind up in a mental institution if she found out. In 1978, the Cooks moved to Baltimore County. That same year, at age thirteen, the victim told a peer and guidance counselor at school about the alleged abuse. Apparently despite a complaint by the victim to the Harford County police and a subsequent investigation, appellant remained in the household. According to the victim, the abuse continued until 1982 when the victim informed her aunt of the problem. The victim's mother was informed immediately and Cook left the residence.

Following another futile complaint, this time to Baltimore County Police in 1982, and an unsuccessful attempt to get private counsel involved in 1988, the victim complained to the State's Attorney's Office for Harford County in 1992. An indictment was served on Cook in September 1992. The original indictment charged appellant, *inter alia,* with abusing the victim "continually on and between January, 1971 through and including December, 1977." At the request of appellant, the State later issued a bill of particulars that narrowed the time frame of the alleged offenses to abusing the victim "continually from the summer of 1974 up through the time alleged in the indictment in Harford County, Maryland. The abuse continued after the family moved to Baltimore County as well."

The trial was held on 14–15 July 1993. According to the victim's testimony, Cook, her stepfather, continuously sexually abused her from 1974 until he left in 1982. The alleged abuse taking place in Harford County occurred between 1974 and 1977. The victim alleged, *inter alia*, that during this period, appellant showed her pornographic materials, fondled her genitals, performed cunnilingus, and attempted to force the victim to perform fellatio. When she refused to perform fellatio, the victim alleged that Cook would call her obscene names and strike her with his penis.

The victim testified that the abuse occurred on a nightly basis. She stated that whenever her mother was away from the family home, "he was in my room." The victim's bedroom was situated adjacent to her parents'. The victim testified that the abuse occurred even when her mother was home in bed.

Appellant only admitted that he intentionally touched the victim's breasts on three or four occasions in a "non-sexual way, playfully." He stated that he admitted to this conduct in 1978 when the victim filed her initial complaint with the Baltimore County Police. Cook could not recall whether he had received the counseling recommended by the police in 1978. He otherwise generally denied the accusations brought by the victim.

The jury found appellant guilty on all counts. On 15 September 1993, Cook was sentenced to fifteen years for the child abuse and second degree sexual offense charges with all but five years suspended, ten years concurrent for the third degree sexual offense charge with all but five years suspended, and five years concurrent for the unnatural and perverted sexual practice charge. The assault with intent to commit a sexual offense in the second degree and battery convictions were merged into the other convictions by the trial court for sentencing purposes.

Additional facts relevant to appellant's issues on appeal are set forth according to the issues presented below.

## I.

■ Appellant asserts that the trial court committed prejudicial error when it dismissed a juror for cause at the close of all of the evidence. Shortly after the commencement of trial on the second day, the trial court held an in-chambers meeting to advise the parties' attorneys that Juror Number 6 had sent the following note to the bench:

Your Onor [sic],

[The victim] stated her stepfather came into her bedroom every night. The mother and stepfather's bedroom right next door. The mother was home in bed sometimes before he got home from work. If he left there [sic] bedroom and went into the step-daughter's bedroom[,] did the Mother know it?

Why not right next door?

"If so!" What for?

If the daughter was raped every night[,] was the Mother having sex with him? How often? Working a full time job and 2 nights on a part time job. *"Had to be a good Man!"* Strike that! *Remark.* (Emphasis in original).

The prosecutor requested that the juror be stricken because the statements in the note reflected an unyielding bias in favor of appellant. Appellant's counsel maintained that the note did not reveal any opinion regarding guilt or innocence, but merely requested clarification of testimony previously heard during the trial. The trial court declined to rule on the issue at that juncture.

The issue was revisited on the record in the trial judge's chambers following presentation of all of the evidence. The parties adhered to their respective positions regarding the meaning of the note. The trial judge gave the attorneys the opportunity to question Juror Number 6 in an attempt to interpret what his note meant. Relevant portions of the discussion among the court, the parties' attorneys, and the juror are set forth below:

COURT: Why did you send me a note?

JUROR: That is what the bailiff told me to do.

COURT: Only if you had questions that you wanted to ask of the witness, is that right?

JUROR: That's right.

COURT: The witnesses were gone. This note came to me this morning. That witness finished testifying yesterday.

JUROR: I didn't understand that they were dismissed of the hearing either.

COURT: ... I don't understand your remark. What was the purpose of that remark in the second paragraph? They aren't questions; they are comments aren't they?

JUROR: It's not meant as a comment. Maybe one part wound up to be comment. I didn't mean it to be but it is, but what was really on my mind, I could not see, I mean, I'm a parent also, what went on in the household really; the daughter answered the questions that when was asked about the household, different things but it was not followed up with the same thing with the mother so that the mother could answer them. With them being in the next room with one partition between them, that's what I couldn't understand.

.　　　.　　　.　　　.　　　.

STATE: You made a statement in there that he is a good man or you're a good man, do you remember that is one of the last things you said, sir; and it's underlined.

COURT: Had to be a good man.

STATE: Had to be a good man. What was that intended for?

.　　　.　　　.　　　.　　　.

JUROR: It wasn't any definite remark or like a remark about that. What it was, the man had to be in good health to be in this kind of shape, well-being, in good shape to be in that kind of health. If a man is going to have sex with his daughter or adopted daughter, he has got to be in good shape to provide his wife with what she needs too.

.　　　*　　*　　*　　*　　*　　*

The juror then compared the alleged frequency of appellant's sexual conduct to his own past sexual experiences to support his conclusion that appellant had to have been in good shape to work so many hours and engage in sexual relations with both his wife and his stepdaughter.

The State still advocated dismissal of the juror. Cook's counsel maintained that the juror should remain a part of the panel. He suggested that the bulk of the note only reflected the juror's desire to hear from a witness again that had already testified, while the "had to be a good man" comment at the note's conclusion only reflected the juror's relationship of his own experience with that of the factual circumstances presented by the case before him.

> The trial judge discharged the juror, stating, *inter alia,:*
>
> Perhaps there was some confusion on his [the juror's] part, but even so, he should [have] realized as a layman that the witness was finished testifying. As I said, why send questions at all when the witness has finished testifying?
>
> I'm very concerned about the last paragraph which I think is a gratuitous evaluation of certain portions of the evidence that were presented at that time in this case. There's a serious question in my mind whether this particular juror has followed instructions that he was given, . . ., specifically [to] keep an open mind throughout the entire case. . . .
>
> Just the overall tenor about the way that he handled this particular aspect of this case and I don't think it's in anyone's best interest to have someone on the jury, and this includes the Defendant's best interest, who isn't listening to what he is being told.

Consequently, Juror Number 6 was excused and the first alternate was seated.

*   *   *   *   *   *

Cook asserts that the trial court abused its discretion by dismissing the juror because no bias had been shown. According to appellant, the court's misjudgment in this regard violated his right to have his trial completed by a particular

tribunal. *Tabbs v. State,* 43 Md.App. 20, 22, 403 A.2d 796, *cert. denied,* 286 Md. 754 (1979). We agree.

Maryland Rule 4–312(b)(3) directs that in all non-capital cases "[a]ny juror who, before the time the jury retires to consider its verdict, becomes or is found to be unable or disqualified to perform a juror's duty, shall be replaced by an alternate juror in the order of selection." Moreover, according to Maryland Rule 4–312(e), "A party may challenge an individual juror for cause. A challenge for cause shall be made and determined before the jury is sworn, or thereafter for *good cause shown.*" (Emphasis added).

In evaluating a disqualification for cause rather than an inability to continue, the "court's discretion is necessarily more limited." *Tisdale v. State,* 41 Md.App. 149, 156, 396 A.2d 289 (1979). This is because a criminal defendant is entitled to have his case heard to completion by the chosen jury the defendant believes may decide in his favor. *Stokes v. State,* 72 Md.App. 673, 676, 532 A.2d 189 (1987). This right is substantial, and therefore "a judge should not dismiss a juror unless the record reveals that such dismissal is clearly warranted." *Id.* Indeed, we have stated that if

> the judge replaces a juror who appears to be favorably disposed toward the defendant ... with an alternate who does not appear to be as favorably disposed to his cause, the defendant has been injured. Even though the jury remains composed of competent and qualified jurors, the judge has remolded it with a 'new' tilt.

*Chew v. State,* 71 Md.App. 681, 705, 527 A.2d 332, *cert. granted,* 311 Md. 301, 534 A.2d 369 (1987), *vacated and rev'd on other grounds,* 317 Md. 233, 562 A.2d 1270 (1989).

A trial court's decision to remove a juror " 'must be based on a sufficient record of competent evidence' " in order to withstand appellate scrutiny. *Stokes,* 72 Md.App. at 680, 532 A.2d 189, *quoting, Commonwealth v. Saxton,* 466 Pa. 438, 442, 353 A.2d 434, 436 (1976). It may strike a juror for cause " 'only where he or she displays a predisposition against innocence or guilt because of some bias extrinsic to the

evidence to be presented.'" *Stokes,* 72 Md.App. at 677, 532 A.2d 189, *quoting, McCree v. State,* 33 Md.App. 82, 98, 363 A.2d 647 (1976). In the past, we have held that a juror's periodic bouts of snoozing and friendly gestures towards the criminal defendant did not warrant good cause to remove the juror where the trial judge failed to inquire about the juror's potential inability to perform and any potential bias in favor of the defendant. *See Stokes,* 72 Md.App. at 677–80, 532 A.2d 189. Likewise, we have held that a juror's acquaintance with a state's witness did not warrant good cause for removal after the trial judge questioned her thoroughly regarding any potential prejudice in favor of the state. *Miles v. State,* 88 Md.App. 360, 373–74, 594 A.2d 1208 (1991).

In the instant case, the trial judge removed the juror for his failure to follow the instruction to "keep an open mind throughout the entire case." Based on the "overall tenor" of the manner in which the juror conducted himself, the trial judge concluded, "I don't think it's in anyone's best interest to have someone on the jury ... who isn't listening to what he is being told."

The trial court's removal decision did not correspond with the juror's in-chambers explanation of his own note. The juror explained that the first paragraph of the note was simply an inquiry directed to why the victim's mother had not been questioned about the abuse allegedly taking place while she was in the house. The juror apparently assumed that the victim's mother could be recalled as a witness to answer his question in this regard.

The trial court found that the juror "should [have] realized as a layman that the witness was finished testifying." Yet the record indicates that the trial court never instructed the jury concerning the procedural rules related to recalling a witness. The assumption by the trial judge that jurors are presumed to know those procedural rules was unwarranted. Moreover, the record does not suggest that the victim's mother, who resided in Baltimore, was not amenable to being recalled. Under such

circumstances, the juror's initial comments did not constitute a failure to follow the instructions of the trial court.

■ The principal interpretive quandary presented by the juror's note, however, was related to the "*Had to be a good man!*" statement. (Emphasis in original). The trial court concluded that the statement reflected a "gratuitous evaluation of certain portions of the evidence" in favor of appellant's position. Indeed, on its face, the statement appears to suggest a bias in favor of Cook. Based on the juror's explanation of the statement, however, we hold that the trial court's interpretation was incorrect.

The juror's explanation, stated *supra*, suggests that while this statement may have been construed as a commentary about sexual prowess, it was not meant to imply a predisposition towards Cook's innocence. He explained that, through personal experience, he knew what the physical effects were upon the male body when one is in constant demand to perform sexual acts. According to the juror, the statement was strictly a commentary about Cook's physical, rather than moral, condition.

■ In addition, the trial court failed, explicitly or implicitly, to inquire if the juror still had the ability to render a fair and impartial verdict based on the evidence. Based on the explanation provided by the juror, therefore, the court should not have presumed that he disregarded his duty to keep an open mind. We hold that the juror's interpretation of the note did not reflect any bias or predisposition in favor of Cook or the State. Accordingly, good cause was not shown to warrant the dismissal of Juror Number 6.

■ The State argues that any error resulting from the dismissal of Juror Number 6 was harmless. In *Stokes*, we held that once a jury has been selected and sworn, the accused maintains a substantial right to have his case decided by the particular jurors selected to try him. *Stokes*, 72 Md.App. at 682, 532 A.2d 189. The trial court automatically injured appellant when it removed, without good cause, the juror

specifically chosen by appellant and replaced him with an alternate. *See id.* Based on our holding in *Stokes,* we conclude that the improper removal was prejudicial and the doctrine of harmless error is inapplicable.

## III.

Appellant argues that the entire indictment against him was subject to dismissal due to vagueness and uncertainty as to the time of commission of the offenses charged. Consideration of this issue necessitates analysis of the constitutional requirements imposed by the Maryland Declaration of Rights and those imposed by Maryland Rule 4–202.

### *Article 21 of the Maryland Declaration of Rights*

Article 21 of the Maryland Declaration of Rights states, in pertinent part, that "every man hath a right to be informed of the accusation against him; to have a copy of the indictment, or charge, . . . to prepare for his defence." Art. 21, Md. Decl. of Rts. Because the indictment set forth the specific unlawful acts allegedly committed by Cook, we assume that his constitutional claim is limited to his purported inability to "prepare for his defence" due to the State's failure to outline precise dates and locations of the alleged offenses.

In *Mulkey v. State,* 316 Md. 475, 560 A.2d 24 (1989), the Court of Appeals recognized that the "ability of a child [victim] to definitely state the date or dates of the offenses or to narrow the time frame of such occurrences may be seriously hampered by a lack of memory." *Mulkey,* 316 Md. at 482, 560 A.2d 24. Accordingly it held that, in the context of a sexual offense case involving a child victim, general allegations as to the time of the offense are constitutionally sufficient where the specific date or dates of the offense is unknown. *Id.* at 484, 560 A.2d 24. In addition, if the offense is continuing in nature, as alleged in the instant case, the State simply may be unable to pinpoint exact dates in the charging document. *Id.* at 485, 560 A.2d 24. We have held that such a technicality should not enable a criminal defendant to "thwart

justice." *Harmony v. State*, 88 Md.App. 306, 314, 594 A.2d 1182 (1991). When the offense is continuing in nature, a criminal defendant's ability to prepare a defense will not be frustrated where he or she is put on notice that the State plans to show a "pattern of ongoing abuses." *Id.* at 314, 594 A.2d 1182. Thus, a bill of particulars stating that various child sexual abuse offenses occurred generally during an eight year period has been held constitutionally valid under Article 21. *Harmony*, 88 Md.App. at 313, 594 A.2d 1182.

The indictment and bill of particulars in the case *sub judice* put Cook on sufficient notice that the State planned to prosecute him for the repeated sexual abuse of the victim over a three-year period in Harford County. The time frame provided in the bill of particulars conformed with the victim's testimony at trial. Accordingly, the State's allegation that the alleged offense occurred "continually from the summer of 1974 up through the time alleged in the indictment in Harford County, Maryland. The abuse continued after the family moved to Baltimore County as well" was constitutionally valid under the Maryland Declaration of Rights.

### *Maryland Rule 4–202*

Maryland Rule 4–202(a) generally requires that a charging document state with "reasonable particularity" the time during and place at which the offense occurred. Md.Rule 4–202(a) (1994). What constitutes "reasonable particularity" depends upon the facts and circumstances of each case as determined by the trial judge. *Mulkey*, 316 Md. at 488, 560 A.2d 24.

The *Mulkey* Court set forth a list of factors for trial judges to scrutinize when evaluating the time requirement imposed by Rule 4–202 in the context of a "sexual offense case involving a child victim," including, but not limited to: "1) the nature of the offense; 2) the age and maturity of the child; 3) the victim's ability to recall specific dates; and, 4) the State's good faith efforts and ability to determine reasonable dates." *Mulkey*, 316 Md. at 488, 560 A.2d 24. Moreover, the Court

authorized the trial courts to consider the information provided in a bill of particulars when determining whether the "with reasonable particularity" requirement had been satisfied. *Id.* at 490–91, 560 A.2d 24.

The initial hearing held on 23 March 1993 to consider Cook's Motion to Dismiss for the State's alleged noncompliance with Rule 4–202 was not recorded. In this instance, the failure to make a transcript of that hearing a part of the record was inconsequential because the motion was renewed just prior to the commencement of trial on 14 July 1993 and argued by appellant's counsel on the record. In addition, any relevant evidentiary matter not highlighted during the trial court's consideration of the issue was presented at trial. Accordingly, we shall review the trial court's denial of appellant's motion to dismiss, based on the *Mulkey* factors.

Cook maintains that the instant case is distinguishable from *Mulkey* because the State made no good faith attempt to inform him about the time frame or location of the alleged offenses.[2] He argues that because the victim in the instant case was an adult when she testified, she should have been able to recall more specific dates and locations than the child who testified in *Mulkey*.

Appellant apparently has failed to discern the difference in relevance for Rule 4–202 purposes between the child victim and the adult witness. The victim was approximately nine years old when the alleged abuse commenced. Cook has not directed our attention to any evidence or authority to suggest that an adult testifying about long past childhood experiences would be in a better position to recall specific dates than a child who recently had been abused.[3] To the contrary, as a child abuse victim grows older, it would seem fair to conclude

---

2. Appellant acknowledges that the facts and allegations set forth in the instant case would satisfy the first three factors in the *Mulkey* analysis.

3. There is no indication in the record that the victim's recollections were induced or freshened by hypnosis.

that distinct memories of exact dates would dim with the passage of time.

In addition, the State's case was built on the foundation of a continuing offense. The continuing nature of the offense was confirmed by the victim's testimony that the abuse occurred *every night*. The burden of isolating specific dates and times in the instant case, therefore, would have been insurmountable and was not required under the dictates of *Mulkey*.

Appellant also claims that the State failed to make a good faith effort to designate specifically the locations at which the alleged abuse occurred. An indictment alleging that the offense was committed in a particular county will satisfy the requirement that the place where the offense occurred must be stated with "reasonable particularity." *State v. Mulkey*, 73 Md.App. 501, 507, 534 A.2d 1374 (1988), *rev'd on other grounds*, 316 Md. 475, 560 A.2d 24 (1989). The State complied with the Rule. Both the indictment and the bill of particulars stated that the alleged offenses occurred in either Harford County or Baltimore County.[4]

The victim's testimony in no way established that the State failed to make a good faith effort to determine the dates and locations of the alleged abuse. We hold that the indictment, considered together with the bill of particulars, conformed sufficiently with the requirements imposed by Rule 4–202. Thus, the trial court did not abuse its discretion in denying appellant's motion to dismiss the indictment.

**JUDGMENTS REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR HARFORD COUNTY FOR**

---

4. The only additional location information revealed by the victim not set forth specifically by the State in either the indictment or the bill of particulars was the exact locations of the alleged abuse. The victim testified that the first act of sexual abuse against her took place during a family vacation in Ocean City, Maryland. The remaining incidents took place in the family residences in Harford County and Baltimore County. The State's recitation of such detail was more generous than the dictates of *Mulkey* required.

NEW TRIAL; COSTS TO BE PAID BY HARFORD COUNTY.